MARY M. WILHITE, WIDOW OF EARNEST WILHITE, DECEASED, PLAINTIFF V. LIBERTY VENEER COMPANY, DEFENDANT-EMPLOYER AND LUMBER-MENS MUTUAL CASUALTY COMPANY, DEFENDANT-INSURANCE CARRIER

No. 7910IC911

(Filed 1 July 1980)

1. **Master and Servant § 74– workers' compensation – disfigurement – post mortem award to dependents**

    The dependents of a deceased employee who suffered a serious bodily disfigurement due to an accident covered by the Workers' Compensation Act but who died due to an unrelated cause are entitled to a *post mortem* award for serious bodily disfigurement based on the best possible medical estimate as to the probable residual disability that would have remained had the employee lived to complete his healing period, notwithstanding the employee had not filed a workers' compensation claim for disfigurement before he died.

2. **Master and Servant § 74– workers' compensation – disfigurement – post mortem award – necessary findings**

    A proceeding to recover an award for serious bodily disfigurement suffered by an employee in a compensable accident before his death from an unrelated cuase is remanded for findings as to (1) the state of the employee's recovery at the time of his death; (2) the best possible medical estimate of the probable residual disability which would have remained had the employee lived; and (3) a determination of the effect such disability would have had upon the employee's capacity to earn a living.

Wilhite v. Veneer Co.

APPEAL by defendants from order of North Carolina Industrial Commission entered 15 May 1979. Heard in the Court of Appeals 25 March 1980.

Action by widow of Decedent, Earnest Wilhite, to recover, *inter alia,* an award for serious bodily disfigurement pursuant to N.C. Gen. Stat. § 97-31 (22). It is undisputed that the decedent received second and third degree burns on approximately thirty percent of his body due to an accident which occurred during the course of his employment on 20 June 1975. The decedent had skin grafted from his left thigh with a 100% "take." The deceased was discharged from the hospital on 2 August 1975.

On 25 August 1975 the deceased saw Dr. L.W. Query concerning chest pains. Upon examination, Dr. Query found that the deceased had suffered a heart attack and he was admitted to a local hospital. The deceased was released on 8 September 1975 with a diagnosis of acute myocardial infarction due to hardening of the arteries. The deceased was again admitted to the local hospital on 21 September 1975 due to weakness and shortness of breath, and he died of heart failure on 23 September 1975. Two medical doctors testified that the decedent's death was not causally related to the burns he had suffered.

The Hearing Examiner for the Industrial Commission held that because the death of the deceased was not caused by the burns, the deceased was not entitled to the death benefits of the Workers' Compensation Act, that the serious disfigurement sustained by the deceased did not cause the deceased to suffer a diminution of his future earning power, and that, therefore, no one was entitled to compensation for the serious bodily disfigurement of the deceased. Upon review by the Full Commission, the Full Commission affirmed the Hearing Examiner's causation determination but held that the deceased suffered serious bodily disfigurement which entitled him to an award of $2,250.00.

Although not clearly stated in the record, it is apparent from the arguments of counsel that the deceased received temporary total disability payments up to the date of his death.

*Sammie Chess, Jr. for plaintiff appellee.*

*Tuggle, Duggins, Meschan, Thornton & Elrod by Joseph E. Elrod, III and Joseph F. Brotherton for defendant appellants.*

CLARK, Judge.

[1] This appeal presents a question of first impression in this jurisdiction: Whether the dependents of an employee who suffers a serious bodily disfigurement due to an accident covered by the Workers' Compensation Act, but who dies due to an unrelated cause, are nonetheless entitled to a *post mortem* award for serious bodily disfigurement?

Several rules of law are undisputed. The purpose of the Workers' Compensation Act, N.C. Gen. Stat. Ch. 97, is "to furnish compensation for loss of earning capacity." *Branham v. Denny Roll & Panel Co.*, 223 N.C. 233, 236, 25 S.E. 2d 865, 868 (1943). "[U]nder our Act, wages earned, or the capacity to earn wages, is the test of earning capacity, or, to state it differently, the diminution of the power or capacity to earn is the measure of compensability." 223 N.C. at 237, 25 S.E. 2d at 868. This rule also applies to compensation for serious bodily disfigurement under N.C. Gen. Stat. § 97-31(22). "Disfigurement alone is not made compensable by the Act. Before it is compensable it must be . . . not only (1) marked disfigurement, but also one which (2) impairs the future usefulness or occupational opportunities of the injured employee." (Citations and internal quotations omitted) *Davis v. Sanford Construction Company, Inc.*, 247 N.C. 332, 339, 101 S.E. 2d 40, 45 (1957). *See also,* 2 Larson, Workmen's Compensation Law 58-32 (1976). "[T]here is a serious disfigurement in law only when there is a serious disfigurement in fact. A serious disfigurement in fact is a disfigurement that . . . adversely affects the appearance of the injured employee to such extent that it may be *reasonably presumed* to lessen his opportunity for remunerative employment . . . . *[N]o present loss of wages* need be established; but to be *serious,* the disfigurement must be of such nature that it may be fairly presumed that the injured employee has suffered a diminution of his future earning power." (Citations omitted) *Davis, supra,* 247 N.C. at 336, 101 S.E. 2d at 43. The Commission "should take into consideration the natural physical handicap resulting from the disfigurement, the age, training, experience, educa-

tion, occupation and adaptability of the employee to obtain and retain employment." *Stanley v. Hyman-Michaels Co.*, 222 N.C. 257, 266, 22 S.E. 2d 570, 576 (1942).

The problem in this case is not one of determining whether the above rules apply, but rather is one of determining *when* they apply. The appellees assert that the proper focus is upon the *post mortem* diminution in earning capacity, and that after one's death there is no earning capacity to be diminished. Appellees also argue that, in any event, no disfigurement award can be made until the decedent had reached maximum medical improvement or the end of the healing period, and since the end of the healing period had not been reached (decedent received temporary total disability payments up to the date of his death), the extent of decedent's disfigurement could not be computed, was therefore premature and was not recoverable. N.C. Gen. Stat. § 97-31 does lend some credence to this argument by providing for compensation during specified periods of time beyond the "healing period." The introductory language of N.C. Gen. Stat. 97-31, however, does not account for the possibility that death from another cause may cut off the healing period. The better rule, we think, is expressed by Professor Larson:

> "[I]f the injured employee dies before stabilization has taken place, the degree of impairment should not be taken as that in effect at the moment of death. The proper procedure is to make the best possible medical estimate of the probable residual disability that would have remained if the employee had lived to complete his healing period."

2 Larson, Workmen's Compensation Law, § 58-40 at 10-258 to -259 (1976). This result, we think, is more consonant with N.C. Gen. Stat. § 97-37, which provides in relevant part:

> *"Where injured employee dies before total compensation is paid.* — When an employee receives or is entitled to compensation under this Article for an injury covered by G.S. 97-31 and *dies from any other cause* than the injury for which he was entitled to compensation, payment of the unpaid balance of compensation shall be made: First to the surviving whole dependents . . . *in lieu of the compensation*

*the employee would have been entitled had he lived."* (Emphasis supplied.)

This determination, however, does not quite resolve the question before us because no claim for disfigurement was filed before decedent's death and no adjudication of such claim was made before his death. The appellees argue that N.C. Gen. Stat. § 97-37, *supra,* only applies when the "employee *receives* or is *entitled* to compensation" under the Act and that he cannot be so entitled if no adjudication has been made prior to his death. Most courts have held that recovery by a decedent's estate may be had "[i]f a claim [was] filed by the injured worker, but no award [was] made at the time of his death," or if "death occurred after an award was made but while it was pending on appeal, even if the original award was a denial." *Larson, supra,* § 58.40 at 10-255 to -258. *Accord, Inman v. Meares,* 247 N.C. 661, 101 S.E. 2d 692 (1958); *Butts v. Montague Bros.,* 204 N.C. 389, 168 S.E. 215 (1933). In North Carolina, in the situation where a claimant dies after a claim has been filed, the claimant's estate may recover all accrued but unpaid benefits, and all unaccrued benefits to which the employee "would have been entitled" had he lived are payable to decedent's dependents pursuant to N.C. Gen. Stat. 97-37. *McCulloh v. Catawba College,* 266 N.C. 513, 146 S.E. 2d 467 (1966); *Inman v. Meares, supra.*

Generally speaking, a lump sum award made prior to decedent's death is deemed to be an "accrued" benefit, *Larson, supra,* § 58.40 at 10-247; but logic compels us to conclude that if, pursuant to N.C. Gen. Stat. 97-31(22), no determination of the lump sum award for disfigurement had been made prior to death, then such entitlements are "unaccrued" until such time as they are determined, and, for this reason, the payment of the lump sum award for disfigurement would pass to the worker's dependents purusant to N.C. Gen. Stat. 97-37 rather than to the deceased worker's estate.

Whether these principles also apply where no claim had been filed by the worker prior to his death is a novel question in this jurisdiction. We note that some states have permitted recovery in this situation. *Snyder Construction Co. v. Thompson,* 145 Ind. App. 103, 248 N.E. 2d 560 (1969); *Kozielec v. Mack Mfg.*

*Corp.*, 29 N.J. Super. 272, 102 A. 2d 404 (1953). *Contra, Flynn v. Asten Hill Mfg. Co.*, 34 Pa. Commw. Ct. 218, 383 A. 2d 255 (1978), tacitly rejected in *Frederico Granero Company v. Commonwealth, Workmen's Compensation Appeal Board*, 409 A. 2d 1187 (1980). After consideration of this and related authority, we think that allowing the dependent widow of the deceased worker to recover that to which her husband would have been entitled is consistent with the statutory purpose of N.C. Gen. Stat. 97-37, and we hold that plaintiff's claim will not be denied because her husband had not filed a worker's compensation claim for disfigurment before he died. We emphasize that there is no requirement in the statute that a claim be filed before the death of the covered worker.

We note that the plaintiff cannot recover for disfigurement during the period in which the decedent received temporary total disability payments; otherwise the plaintiff would, in effect, be receiving a double recovery for the same injury and such a result has already been rejected by our Supreme Court in *Stanley, supra,* 222 N.C. at 265, 22 S.E. 2d at 576, in the context of an award for disfigurement where permanent total disability payments had been made.

[2] Finally, we have a serious concern as to whether there is sufficient evidence in the record to support an award for disfigurement in accordance with the standards articulated in the second paragraph of this opinion. Appellees point out that no photographs or diagrams of any kind were introduced into evidence and no evidence was adduced as to the state of decedent's recovery at the time of his death from an unrelated cause. Consequently, this case is reversed and remanded to the Industrial Commission and the Industrial Commission is ordered to make additional Findings of Fact concerning: (1) the state of decedent's recovery at the time of his death; (2) the best possible medical estimate as to the probable residual disability that would have remained had the decedent lived; and, (3) a determination of the effect of such disability on the capacity of the decedent to earn a living. Upon such Findings of Fact, the Industrial Commission shall, if necessary, amend the award to the plaintiff for disfigurement suffered by her deceased husband.

The Order of the Commission is

Reversed and Remanded for proceedings consistent with this opinion.

Judges VAUGHN and MARTIN (Harry C.) concur.