The undersigned have reviewed the prior Order and Opinion and Award based on the record of the proceedings before former Deputy Commissioner Neill Fuleihan and the briefs and oral arguments before the Full Commission. Defendant appealed from the 14 December 1994 Order in which defendant was Ordered to investigate and ascertain persons who may be entitled to receive compensation pursuant to G.S. §97-37. The 14 December 1994 Order was incorporated by reference into the 13 April 1995 Opinion and Award, and is therefore likewise incorporated herein. Defendant has not shown good ground to reconsider the evidence, receive further evidence, or to amend the 14 December 1994 Order. Regarding plaintiff's appeal, plaintiff has not shown good ground to reconsider the evidence, receive further evidence, or to amend the Opinion and Award.
* * * * * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing, in a document entitled Stipulation dated 18 June 1993, and in a document entitled Stipulation dated 10 March 1995, as
STIPULATIONS
1. That Howard Stamey sustained a compensable injury while employed with defendant, City of Asheville, on 7 September 1990, and that his average weekly wage on that date was $311.20.
2. That defendant-employer, City of Asheville, is subject to and bound by the provisions of the North Carolina Workers' Compensation Act and that the employment relationship existed between Howard Stamey and the City of Asheville on 7 September 1990. The employer was self insured on the date of the injury with Hewitt, Coleman and Associates acting as servicing agent.
3. A series of medical records and reports from Asheville Orthopedic Associates, P.A. marked as Stipulated Exhibit #1, are received into evidence.
4. An affidavit by plaintiff's counsel dated 18 June 1993, marked as Stipulated Exhibit #2, is received into evidence.
5. An affidavit by defendant's counsel dated 22 February 1995 with attachments consisting of publishers' affidavits, is received into evidence.
* * * * * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. On 7 September 1990, Howard Stamey (hereinafter decedent), a 62 year old male, sustained an injury by accident arising out of and in the course of his employment with defendant employer. As a result of his injury, decedent sustained complete, common peroneal nerve palsy of the right lower extremity with loss of motor and sensation.
2. On 9 July 1991, decedent reached the end of the healing period from his 7 September 1990 injury by accident and as a result thereof, retained a thirty-eight (38) percent permanent partial impairment of his right lower extremity. Thereafter, decedent did not return to work with defendant employer however, decedent's failure to do so was under non-compensable circumstances.
3. Thereafter, decedent's attorney engaged in settlement negotiations with defendant-employer. Decedent rejected defendant-employer's initial offer of settlement. On 1 June 1992, decedent filed a claim (Form 18) and on 2 June 1992 filed a Request for Hearing (Form 33) with the North Carolina Industrial Commission.
4. On 1 July 1992, decedent accepted defendant-employer's offer to settle his claim for compensation by Compromise Settlement Agreement for $27,250.00, of which approximately $13,500.00 was for anticipated future medical expenses.
5. On 5 July 1992, decedent died from causes unrelated to his 7 September 1990 injury by accident.
6. At the time of decedent's death, the settlement agreement had not been reduced to writing, and thus no settlement agreement was filed with, or approved by, the Industrial Commission.
7. At the time of his death, decedent was living with, but was not married to, Ornan P. (Annette) Morgan. Decedent and Ms. Morgan had lived together in a husband-wife relationship since 1964. Ms. Morgan was the named beneficiary of decedent's life insurance policy and of his state retirement benefits. The deed to the house in which decedent and Ms. Morgan lived was in Ms. Morgan's and her son's names. Decedent contributed to house payments, household expenses and utilities and provided Ms. Morgan with her transportation needs. Throughout the 28 years of decedent's and Ms. Morgan's relationship, Ms. Morgan's only income was $130.00 a month in Social Security Benefits. Ms. Morgan relied upon decedent for all support beyond her $130.00 a month in Social Security Benefits.
8. Decedent was originally from the Spruce Pine area of Mitchell County in North Carolina. Decedent had been married prior to the time in which he and Ms. Morgan began their relationship and as a result of that marriage had three children, Sue, Chris and Charles. Sometime in the early 1960's and prior to decedent and Ms. Morgan living together in a husband-wife relationship, decedent's wife and three minor children left North Carolina and moved to the Golden Colorado area. Decedent had no contact from them thereafter.
9. Although decedent was previously married and had three children by that marriage, all attempts to locate these individuals at the time of decedent's funeral as well as all due process attempts by defendant employer to locate these individuals pursuant to the 14 December 1994 Order of Deputy Commissioner Fuleihan to provide them with notice of this pending action have proven unsuccessful.
10. At the time of his death, decedent had a half sister, Ruth Stamey Gillen, who is a party plaintiff in this action. Decedent and Ms. Gillen had the same biological mother. Although decedent's biological father, William McKinley Stamey, took Ms. Gillen in as a young child and raised her as though she were his own biological child and she took the surname Stamey, she is uncertain if she was ever formally adopted by William McKinley Stamey.
11. At the time of decedent's death, Ms. Gillen was not dependent upon decedent for support, but maintained a very close relationship with decedent.
12. Ms. Gillen was not married at the time of the 9 September 1994 evidentiary hearing but has previously been married and has several children as a result thereof.
13. Decedent's funeral expenses were approximately $15,000.00 and were paid by plaintiff Ornan P. Morgan with proceeds from a $20,000.00 life insurance policy in which Ms. Morgan was decedent's beneficiary.
* * * * * * * * * * * * * * *
Based on the findings of fact the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The parties' agreement to settle plaintiff's claim for compensation, not having been reduced to writing and filed with, and approved by, the Industrial Commission, is not binding upon the parties. G.S. § 97-17; Baldwin v. Piedmont Wood Yards, Inc.,58 N.C. App. 602, 293 S.E.2d 814 (1982).
2. As a result of decedent's 7 September 1990 injury by accident arising out of and in the course of his employment with defendant employer, decedent sustained a thirty-eight (38) percent permanent partial disability to his right lower extremity for which he was entitled to 76 weeks of compensation at the rate of $207.57 per week beginning 9 July 1991. G.S. § 97-31(15).
3. On 5 July 1992, Plaintiff died from causes unrelated to his compensable injury of 7 September 1990. Plaintiff's death occurred prior to a determination by the Commission that he was entitled to compensation for permanent partial disability to his lower right extremity. Therefore, compensation which had accrued but was unpaid at the time of decedent's death is to be paid to decedent's estate (51 and five-seventh weeks) and compensation which was not yet accrued and unpaid at the time of decedent's death (24 and two-seventh weeks) is to be paid according to the following distribution scheme: first to the surviving whole dependents; second to partial dependents and, if no dependents, to the next-of-kin; and if there are no whole or partial dependents or next-of-kin, then to the personal representative. G.S. §97-37; G.S. § 97-40; Wilhite v. Liberty Veneer Co., 47 N.C. App. 434,267 S.E.2d 566 (1981); McCulloh v. Catawba College, 266 N.C. 513,146 S.E.2d 467 (1966).
4. Decedent's estate is entitled to the accrued permanent partial disability benefits (51 and five-seventh weeks) due decedent by reason of his 7 September 1990 injury by accident. G.S. § 97-37; G.S. § 97-40; Wilhite v. Liberty Veneer Co.,47 N.C. App. 434, 267 S.E.2d 566 (1981); McCulloh v. Catawba College,266 N.C. 513, 146 S.E.2d 467 (1966)
5. Ms. Morgan, who was not married to, but living with decedent in a husband-wife relationship at the time of his death, and who was partially dependent upon decedent for support, is not entitled to benefits as a dependent under the North Carolina Workers' Compensation Act. G.S. § 97-39; Fields v. Hollowell,238 N.C. 614, 78 S.E.2d 740 (1953). Although the equities (Ms. Morgan lived with decedent the same as if she were his wife and took care of him, even to the extent of spending $15,000 of her $20,000 insurance proceeds for his funeral when she was under no obligation to do so) and the changing times (when the Courts in various jurisdictions are beginning to recognize legal rights as among unmarried adults living together as life companions) would perhaps indicate that a different result would be reached if this were a case of first impression, we are constrained by the Fields
decision, and Plaintiff's recourse is to the North Carolina Supreme Court or to the North Carolina General Assembly.
6. Ms. Gillen, who as decedent's half sister, is his only known next-of-kin, as of the close of the evidentiary record is entitled to the not yet accrued permanent partial disability benefits (24 and two-sevenths weeks) due decedent by reason of his 7 September 1990 injury by accident. G.S. § 97-37; G.S. § 97-40;Wilhite v. Liberty Veneer Co., 47 N.C. App. 434, 267 S.E.2d 566
(1981); McCulloh v. Catawba College, 266 N.C. 513, 146 S.E.2d 467
(1966).
7. Inasmuch as decedent died from causes unrelated to his compensable injury of 7 September 1990, plaintiff Ornan (Annette) Morgan is not entitled to reimbursement of $2,000.00 towards funeral expenses she paid for decedent's funeral. G.S. § 97-38.
8. Deputy Commissioner Fuleihan properly ordered the City to make the search for potential heirs since it was the City that would be spared from the possibility of a double recovery had the search for heirs not been undertaken.
* * * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay decedent's estate compensation at the rate of $207.57 per week of 51 and five-seventh weeks for the accrued portion, as of the date of decedent's death, of the thirty-eight (38) percent permanent partial disability of the right leg which decedent sustained as a result of his 7 September 1990 injury by accident. As said compensation has accrued, it shall be paid in a lump sum.
2. Defendant shall pay plaintiff Ruth Stamey Gillen, compensation at the rate of $207.57 per week for 24 and two-seventh weeks for the not yet accrued portion, as of the date of decedent's death, of the thirty-eight (38) percent permanent partial disability of the right leg which decedent sustained as a result of his 7 September 1990 injury by accident. As said compensation has accrued, it shall be paid in a lump sum.
3. Defendant shall pay all costs.
 S/ __________________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ __________________ DIANNE C. SELLERS COMMISSIONER
DISSENTING:
S/ __________________ COY M. VANCE COMMISSIONER