CALLIE MAE BALDWIN, Widow, WILLIE BALDWIN, Deceased, Employee, Plaintiff v. PIEDMONT WOODYARDS, INC., Employer; AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, Carrier, Defendants

No. 8110IC1116

(Filed 3 August 1982)

1. **Master and Servant § 69— agreement for compensation signed by parties—not binding on commission**

   In a workers' compensation proceeding, the Industrial Commission did not err in failing to give effect to an agreement for compensation signed by the parties where the agreement was not approved by the Industrial Commission pursuant to G.S. 97-17 and therefore was not binding.

2. **Master and Servant § 71.1— computation of average weekly wages—selling pulpwood—wages equals income minus certain expenses**

   In a workers' compensation proceeding where the decedent did not receive wages from defendant but sold pulpwood to defendant for a certain price per cord, decedent's average weekly wages should have been computed by determining the income received from defendant minus certain expenses incurred in producing revenue including depreciation on business equipment, interest on business debts and the purchase price of a saw. G.S. 97-2 and G.S. 97-38.

APPEAL by defendants from order of North Carolina Industrial Commission entered 30 March 1981. Heard in the Court of Appeals 28 May 1982.

This appeal involves the proper amount of workers' compensation to be paid the plaintiff, whose husband was killed on 1 November 1978. The parties made an agreement dated 6 February 1979 as to the amount that would be paid. This agreement was not approved by the Industrial Commission. After a hearing the Deputy Commissioner who heard the case found, based on a stipulation of the parties, that the decedent was employed by Piedmont Woodyards and was killed in an accident arising out of and in the course of his employment. The decedent was not paid a salary or wages, but received a certain amount for each cord of pulpwood delivered to Piedmont Woodyards. The decedent owned a truck and other equipment which he used in his business of cutting and preparing pulpwood for sale. The Deputy Commissioner found that the money paid by Piedmont to the decedent in 1978 for pulpwood was the sum upon which his average weekly wage would be calculated in determining the com-

pensation to be paid to the plaintiff. The Deputy Commissioner did not deduct from the money paid to decedent any of his expenses in producing the pulpwood.

The defendants appealed to the Full Commission. In its opinion and award, the Full Commission struck the award of the Deputy Commissioner. It calculated the decedent's average weekly wages by deducting from the sum he received from Piedmont certain expenses he had incurred in producing the pulpwood including insurance and license plates for his truck; gas and oil for his truck; and saws, repairs to his equipment and the purchase price of supplies. The Full Commission did not deduct depreciation on the decedent's truck and loader, interest charges on business debts or the purchase price of a saw from the gross receipts of the decedent in calculating his average weekly wages.

The defendants appealed from the opinion and award of the Full Commission.

*Paul S. Messick, Jr. for plaintiff appellee.*

*Teague, Campbell, Conely and Dennis, by G. Woodrow Teague and George W. Dennis, III, for defendant appellants.*

WEBB, Judge.

[1] The defendants' first assignment of error is to the Commission's failure to give effect to the agreement for compensation dated 6 February 1979 which was signed by the parties. This agreement was not approved by the Industrial Commission pursuant to G.S. 97-17 and it is not binding.

[2] The only other question involved in this appeal is the correctness of the determination of the decedent's earnings in setting compensation. G.S. 97-38 provides that death benefits shall be based on the decedent's average weekly wages. G.S. 97-2 provides in part:

"(5) Average Weekly Wages.—'Average weekly wages' shall mean the earnings of the employee in the employment in which he was working at the time of the injury . . . divided by 52 . . . .

\*     \*     \*

> But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury."

The calculation of compensation is difficult in this case. G.S. 97-38 provides compensation will be based on average weekly wages. The decedent did not receive wages from Piedmont Woodyards but sold pulpwood to Piedmont for a certain price per cord. The Deputy Commissioner treated the entire sum received by the decedent in 1978 as wages. The Full Commission calculated the income of decedent by deducting certain expenses from what he received from Piedmont. We agree with the Full Commission that by the method it used in determining income from Piedmont, expenses incurred in producing revenue should be deducted. We believe, however, that depreciation on business equipment, interest on business debts and the purchase price of a saw should have been included as business expenses. We note that depreciation as allowed by the Internal Revenue Service might not coincide with actual depreciation and that if the interest paid is on a business debt incurred during a previous year, it would not be deductible from the current year's income. If the saw were to last for more than one year, its cost could be amortized rather than the entire price being deducted in the current year. We reverse and remand for further consideration.

We have filed today *York v. Unionville Fire Department*, 58 N.C. App. 591, 293 S.E. 2d 812 (1982) in which a problem was faced similar to the one in this case. We point out, as in that case, that if the Commission does not feel the method it first used produces a result fair to the employer and employee, it may use an alternate method in determining compensation. Since the decedent in this case operated his own business, the return to him for his work would not necessarily coincide with the profit and loss statement. The return to the decedent might, in operating his own business, be substantially more than is reflected in the profit and loss statement. The Commission might also want to consider what it would have cost the decedent to hire someone to have done his job.

The defendants also contend the Industrial Commission erred in its mathematical calculations in fixing compensation. We do not discuss this assignment of error as the matter upon which it is based may not recur.

Reversed and remanded.

Judges CLARK and WHICHARD concur.