***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments of the parties. The Full Commission hereby affirms in part and reverses in part the Opinion and Award of Deputy Commissioner Ledford.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. On May 15, 2007, plaintiff was an employee of defendant-employer.
2. On May 15, 2007, the parties were subject to the North Carolina Workers' Compensation Act. *Page 2 
3. On May 15, 2007, plaintiff suffered an injury by accident while in the course and scope of her employment with defendant-employer.
4. On March 26, 2008, defendants filed with the North Carolina Industrial Commission a Form 60, Employer's Admission of Employee's Right to Compensation, stating that the disability resulting from the injury began on May 15, 2007.
5. Defendants have paid temporary total disability compensation in the amount of $511.98 per week from May 15, 2007 until November 20, 2007. The parties agree that said payments by defendants and acceptance of those payments by plaintiff are without prejudice by either party to challenge the average weekly wage.
6. The parties offered into evidence the following stipulated documents:
 (a) Stipulated Exhibit 1 — Pretrial Agreement (PTA).
 (b) Stipulated Exhibit 2, which included four subparts and contained: Industrial Commission Forms; medical records; income forms, and discovery responses. At the time of hearing before the deputy commissioner, the Form 22, a 2007 Schedule C, and Form 1040 were added to Exhibit 2.
7. In addition to the foregoing exhibits, plaintiff offered a Transaction Detail by Account for May 2007, received as Plaintiff's Exhibit 1.
8. Defendants identified a blank Form 1040 as Exhibit 1 and offered a Transaction Detail by Account for January 2008, received as Defendants' Exhibit 2.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows: *Page 3 
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was sixty-one years old and was employed with Caldwell Banker Advantage. Plaintiff had been employed as a Real Estate Agent since 1998 either for defendant-employer or a related company.
2. Plaintiff suffered an admittedly compensable work related injury on May 15, 2007 involving her lower extremities when she tripped and fell while conducting a home inspection.
3. Plaintiff's orthopaedic medical treatment has been provided by Dr. Robert Zura at Duke University. As a result of the May 15, 2007 work injury, plaintiff sustained a dislocated fracture to her left ankle, which required surgery, including the placement of hardware. This surgery was performed on May 25, 2007.
4. As a consequence of Dr. Zura's findings during the surgical procedure, plaintiff was referred to Dr. Thomas J. Weber for consideration of treatment of osteoporosis. Dr. Weber practices endocrinology with a focus on metabolic bone disease and osteoporosis.
5. On July 24, 2007, Dr. Weber diagnosed plaintiff with osteoporosis and prescribed Vitamin D, Calcium, and Fosamax. Plaintiff's use of Fosamax and the treatment for osteoporosis is not a consequence of her work related injury. Dr. Weber opined that there was no statistical data to show that taking Fosamax would reduce the chance that plaintiff would have a re-fracture of her ankle when the hardware was removed.
6. Dr. Zura opined that plaintiff needed to be treated for her osteoporosis even if she had not sustained the fracture on May 15, 2007. He further opined that the relationship between plaintiff's fracture and her osteoporosis is that the fracture was the event that led her to have treatment with him. Since he treats the whole person and not just the specific injury, he referred plaintiff for treatment of the osteoporosis. Plaintiff's treatment of the osteoporosis was not *Page 4 
necessary to effect a cure, give relief, or lessen the period of disability for plaintiff's work related ankle injury.
7. After plaintiff's work injury, plaintiff was out of work and was totally disabled between May 15, 2007 and August 16, 2007. In August of 2007, plaintiff was released by Dr. Zura to restricted limited duty desk work three days per week for three hours per day between August 16, 2007 and November 20, 2007. However, while on light duty, plaintiff was only able to do desk work and was not able to show properties as she had before. Plaintiff's left ankle was still healing and it was difficult to walk on it. During this period, plaintiff had only a few showings but had to take someone with her to actually show the property and was not able to get out of the car to walk around. Although she was doing office work, she was not in a position to perform the duties expected of a real estate agent, such as looking at new properties and conducting showings. Therefore, plaintiff remained disabled from earning new commissions until November 20, 2007, when plaintiff returned to full time work as tolerated. Plaintiff has continued to limit her hours and activities, which she alleges is due to ongoing problems from her work-related injuries.
8. Since November 2007, plaintiff has continued to list and sell property for Caldwell Banker and has earned commission in January 2008 in the amount of $9,252.81, in February 2008 in the amount of $6,487.29, in March 2008 in the amount of $1,874.88, and in April 2008 in the amount of $9,196.64. Plaintiff has continued to list houses thereafter.
9. Plaintiff is a Real Estate Agent and receives payment on a 1099. Plaintiff filed income tax returns that include a Schedule C. Plaintiff's Schedule C shows various deductions that she takes from the gross commission she receives. Plaintiff uses the Schedule C to *Page 5 
determine her net income. Plaintiff then reports the net income on the Form 1040 which is amount used to determine her tax liability.
10. Plaintiff's average weekly wage is properly calculated using the final method set forth in N.C. Gen. Stat. § 97-2(5). Due to the nature of the Real Estate business and the fact that plaintiff's net income is the actual reported earning amount, the undersigned finds that the last method of N.C. Gen. Stat. § 97-2(5) is the fairest method to both parties in this case for determining average weekly wage. Calculation of average weekly wages using the first method that considers only gross commissions would create an elevated income for plaintiff and be unfair to defendants.
11. Using the final method to determine average weekly wage, the Full Commission finds that in 2006 plaintiff's gross receipts were $58,521.90. Plaintiff reported $23,439.45 in expenses for a net income of $36,082.45. This equates to an average monthly income for the plaintiff of $3,006.87 for 2007. For the seven and a half months that plaintiff worked from May 16, 2006 to December 31, 2006, plaintiff's income based on her monthly average is $22,551.53.
12. Plaintiff's 2007 tax returns show gross receipts of $63,306.25 with a deduction of expenses of $16,752.42 yielding a net income of $46,553.83. This equates to a net income average of $3,879.42 per month. In the four and a half months plaintiff worked from January 1, 2007 to May 15, 2007, her total income using the average monthly amount would be $17,457.39.
13. By adding $22,551.53 (income for 2006) with $17,457.39 (income for 2007), the total income for the 52 weeks prior to plaintiff's injury would be $40,008.92 yielding an average weekly wage of $769.40 and a compensation rate of $512.96.
14. Defendants have paid temporary total disability compensation in the amount of $511.98 from May 15, 2007 to November 20, 2007. *Page 6 
15. Based upon the greater weight of the evidence, plaintiff was totally disabled from May 15, 2007 through November 20, 2007. Plaintiff has failed to establish based upon the greater weight of the credible evidence that plaintiff continues to be disabled after November 20, 2007 due to her compensable work related ankle injury.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered an admittedly compensable injury by accident arising out of and in the course of her employment with the Defendant-employer when she fell at work on May 15, 2007. N.C. Gen. Stat. § 97-2(6).
2. As a result of her injury by accident of May 15, 2007, Plaintiff sustained injuries to both of her lower extremities. Defendants are responsible for payment of all expenses incurred for reasonably necessary treatment of these injuries, including the surgery performed on Plaintiff's left ankle. N.C. Gen. Stat. §§ 97-2(19), 97-25.
3. Due to the nature of plaintiff's work, it is appropriate in this case to use the final method set forth in N.C. Gen. Stat. § 97-2(5) to calculate average weekly wage, which allows for a calculation of average weekly wage that is fair to both parties. Otherwise, the average weekly wage of plaintiff would be inflated to create an unfair result as to defendants. N.C. Gen. Stat. § 97-2(5); Christian v. Riddle MendallhallLogging, 117 N.C. App 261, 450 S.E. 2d 510 (1994).
4. As plaintiff's gross commissions do not accurately reflect her earnings, it is appropriate to deduct the expenses incurred in generating those revenues and use the net income that plaintiff reports on her income tax as the appropriate average weekly wage. In this case, *Page 7 
plaintiff's net earnings over the 52 weeks prior to her injury are $40,008.92 which yields an average weekly wage of $769.40 and a compensation rate of $512.96. N.C. Gen. Stat. § 97-2(5); Christian v.Riddle Mendallhall Logging, 117 N.C. App 261, 450 S.E. 2d 510
(1994).
5. Plaintiff is entitled to temporary total disability benefits at the rate of $512.96 from May 15, 2007 until November 20, 2007. N.C. Gen. Stat. § 97-29. Defendants are allowed a credit for TTD previously paid in this matter in the amount of $511.98 per week.
6. Plaintiff has failed to establish by the greater weight of the evidence that her osteoporosis was caused, aggravated or exacerbated by her work injury. Plaintiff's treatment for osteoporosis is not related to her compensable ankle fracture and does not effect a cure, give relief, or lessen plaintiff's period of disability for her ankle fracture. N.C. Gen. Stat. § 97-25. Accordingly, the treatment for osteoporosis is not the responsibility of defendants and defendants are not obligated to pay for that treatment. Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750
(2003).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendants shall pay all expenses incurred for reasonably necessary medical treatment of plaintiff's injuries incurred due to the compensable May 15, 2007 injury by accident.
2. Defendants are not responsible for treatment of plaintiff's osteoporosis.
3. Defendants shall pay plaintiff temporary total disability compensation at the rate of $512.96 per week for the period of May 15, 2007 through November 20, 2007. Defendants *Page 8 
are allowed a credit for payments previously made during this period at the rate of $511.98 per week.
4. A reasonable attorney's fee of twenty-five percent of the amounts due plaintiff shall be deducted therefrom and paid to plaintiff's attorney.
5. Defendants shall pay the cost.
This the 7th day of July 2009.
S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1